UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHERYL ALLEN, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:08-0273 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| DAVIDSON TRANSIT ORGANIZATION, ) | |
| METROPOLITAN TRANSIT COMPANY, ) | |
| AMALGAMATED TRANSIT UNION, ) | |
| ATU LOCAL 1235, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is defendant Davidson Transit Organization's Motion to Dismiss Counts 1, 3, and 5 ("DTO's Motion") (Docket No. 28), Metropolitan Transit Authority's Motion to Dismiss ("MTA's Motion") (Docket No. 31), Amalgamated Transit Union's Motion to Dismiss ("ATU's Motion") (Docket No. 40), and Local Union 1235's Motion to Dismiss ("LU 1235's Motion") (Docket No. 42.) All these motions have been fully briefed. ATU's Motion, LU 1235's Motion, and MTA's Motion will be granted. DTO's Motion will be granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiff Sheryl Allen is an African-American, who was hired as a bus driver for MTA on November 9, 2000 and remains an employee in good standing.[1] Defendant MTA is a publicly

---

[1]Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1) and the plaintiff's responses (Docket Nos. 47 and 53) to the various motions to dismiss.

1

chartered metropolitan transit service provider for Davidson County, Tennessee. Defendant DTO is a private, nonprofit corporation responsible for the employment of all personnel employed in the provision of public transit services in Davidson County, Tennessee. Defendant ATU is a labor organization, and Defendant LU 1235 is a chapter of ATU. Beginning on July 5, 2005, LU 1235 was held in trusteeship by ATU, with Kenneth Kirk, International Vice President of ATU, supervising LU 1235 as of that date. At all times material to this action, a collective bargaining agreement ("CBA") was in place between DTO and LU 1235, which, along with the ATU and LU 1235 constitutions, set forth the standard of care for the union to use in its dealings in matters concerning labor relations and its members, including the plaintiff.

Following her hire, the plaintiff joined LU 1235, and she remains a member in good standing. During the course of the plaintiff's employment, she suffered a work-related physical injury, and her physician placed her on "light duty," which placed restrictions on her work. In the winter and summer months, the "light duty" that DTO gave to the plaintiff and other similarly-situated minority employees involved completing rider counts by monitoring arrivals and departures of passengers at the main terminal. DTO insisted that these employees stand to complete the counts and that the counts be performed in this fashion, no matter the weather. Additionally, neither the plaintiff nor similarly situated minority employees were allowed to bring their cars to the counts so that they could perform the counts from their cars or use their cars to seek out meals. Despite injury, the plaintiff and other similarly situated minority employees were forced to work in inclement weather, without relief, access to food, breaks, or restrooms, all of which aggravated the plaintiff's existing physical injury. On the other hand, "light duty" workers favored by management, who were predominantly white and/or male, were

2

given assignments that allowed them to work inside, take breaks, use their personal vehicles, and have access to restrooms. The plaintiff filed a grievance with LU 1235 concerning this disparity but was not satisfied with the response, and, thereafter, filed a grievance with ATU about the same issues.

During the course of her employment, plaintiff was also subject to hearing derogatory comments made by other employees about African-Americans, women, and Hispanics, including a reference to women as "bitches" made by a sitting officer at a LU 1235 meeting. Plaintiff complained to DTO, ATU and LU 1235 about the hostile remarks but was never satisfied by the response of any of these entities, and the derogatory comments were even defended by DTO representatives when reported.

On March 17, 2008, the plaintiff filed her Complaint in this action, which asserts a total of fourteen claims against various defendants. Through a series of motions to dismiss filed over the next several months, the defendants moved to dismiss each of these claims.

## ANALYSIS

The plaintiff claims that the defendants MTA and DTO violated the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Tennessee Human Rights Act (THRA), § 4-21-101 *et seq*. Further, the plaintiff claims that the defendants ATU and LU 1235 acted negligently toward her, were unjustly enriched, breached the contract between them, and violated the Tennessee Consumer Protection Act.

**I.      Motion to Dismiss – Failure to State a Claim**

3

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6)[2], the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S.Ct. 1955, 1964-65 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion

---

[2] The defendants are not always clear as to whether they are moving for dismissal under Rule 12(b)(1) or 12(b)(6), but, as discussed below, with one exception, the relevant grounds for dismissal here, *i.e.*, federal preemption and the merits of the claim, assuming the Complaint allegations are true, invoke the court's obligation to dismiss for failure to state a claim under Rule 12(b)(6) rather than the court's obligation to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 608 (6th Cir. 2004).

4

of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." *Twombly*, 127 S.Ct. at 1965 n.3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965; *see also Swierkiewicz,* 534 U.S. at 508 n.1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S. at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely"). With this standard in mind, the court turns to an analysis of the plaintiff's claims, considering each group of defendants in turn.

## II.     Claims Against the Union Defendants

### A.     ATU and LU 1235

Most of the plaintiff's claims against ATU and LU 1235 are pre-empted and will be dismissed on that basis. The claims that are not pre-empted will be dismissed because the

5

plaintiff's allegations, even taken as true, do not raise the plaintiff's right to relief above the "speculative" level, as *Twombly* requires to sustain a claim at the motion to dismiss stage.

Since 1962, the Supreme Court has held that section 301 of the Labor Management Relations Act (LMRA) pre-empts state law claims that substantially implicate the meaning of collective bargaining agreement terms.[3] *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994) (citing *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95 (1962)). A state-law claim can proceed in spite of section 301 pre-emption only if the claim is "independent of the agreement," *i.e.*, the claim can be resolved independently of the CBA at issue and the court, in resolving the claim, will not have to construe the CBA. *Id.* The Sixth Circuit has formulated a two-step test to determine whether section 301 pre-emption applies. *Id.* First, the court determines whether proof of the state-law claim requires interpretation of the CBA terms. *Id.* Second, the court must determine whether the right the plaintiff invokes is created by state law or the CBA. *Id.* "If the right is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one of the criterion is satisfied, Section 301 pre-emption is warranted." *Id.* Therefore, if the plaintiff invokes rights created by the CBA, or must make substantial reference to the CBA in order to establish an essential element of his claim, the claim is pre-empted. *Id.*

Here, violations of the rights created by the CBA are the basis for the plaintiff's negligence claims against defendants ATU and Local 1235. The plaintiff alleges that LU 1235

---

[3] Section 301 states "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

6

had a duty to comply with the CBA and that ATU had a duty as the parent union of LU 1235 to ensure that LU 1235 complied with the terms of the CBA. (Docket No. 1 at 16-17.) Therefore, the claims of negligence against ATU and Local 1235 are based on the "duty of care [owed] to the Plaintiff in accordance with the terms and conditions of the CBA." (*Id.*) Evaluating these negligence claims to see if the duty of care was breached would plainly require the court to construe the CBA. Additionally, the claims of unjust enrichment are based on the respective unions' roles as "collective bargaining agent[s]"; clearly, whether the unions were unjustly enriched through their roles as collective bargaining agents for the plaintiff would require the court to examine what the unions' obligations were under the CBA. (*Id.* at 17-18.) Therefore, both the plaintiff's negligence and unjust enrichment claims against ATU and LU 1235 are plainly pre-empted and will be dismissed on that ground.

  The court reaches the same conclusion as to the plaintiff's Tennessee Consumer Protection Act claims, which allege that ATU and LU 1235 failed to "provide the services, protection and other benefits promised to Plaintiff as a condition of her union membership." (Docket No. 1 at 19-20.) While these claims are not facially tied to the CBA, resolving these claims, as the claims above, would undoubtedly cause the court to construe the CBA. The plaintiff's Complaint makes clear that the Consumer Protection Act claims are based on the plaintiff's payment of dues to the unions and the plaintiff's allegation that the unions did not aggressively pursue her interests vis-a-vis her employer, despite the fact that she paid dues. Evaluating this argument would undoubtedly require the court to construe the CBA to determine if the defendants provided the "services, protection, and other benefits" promised. Therefore,

7

these claims are also pre-empted by Section 301.[4]  *See Banks v. Alexander*, 2008 WL 4297224, *3 (6th Cir. Sept. 19, 2008) ("the complaints amount to nothing more than an allegation that [the union and its representatives] breached duties imposed" by the CBA, "and parties may not avoid preemption by relabeling as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements.") (internal citations and quotations omitted)

Finally, the plaintiff claims that ATU and LU 1235 breached the binding contract between them, a contract of which, the plaintiff asserts, she is a third-party beneficiary. (Docket No. 1 at 18-19.)  The court can find no factual support in the Complaint for the "blanket assertions" that comprise this claim, *i.e.*, no support for the notion that the plaintiff is a third-party beneficiary and no support for the notion that the contract was breached.  The plaintiff's breach of contract claims against ATU and LU 1235 will be dismissed.

## III. Claims Against the Transit Defendants

### A. MTA

MTA is entitled to dismissal of all three causes of action against it.  As the court reads the plaintiff's Complaint, the plaintiff alleges that, even though DTO is "responsible for all personnel employed in the provision of public transit services to Davidson County, Tennessee" (Docket No. 1 at 4), DTO and MTA were "dual" employers of the plaintiff because DTO was the "employment arm" for MTA.  (*Id.* at 4, 13.)  The problem with the plaintiff's "employment arm" allegation is that, as discussed by this court only a few months ago, while there is some overlap

---

[4] The court is aware that ATU and LU 1235 have offered other, potentially compelling, bases for dismissal, including that the plaintiff's claims may be time-barred and not exhausted.  Because the claims are clearly pre-empted it is not necessary for the court to closely examine these rationales for dismissal.

8

between the two organizations, "it is a settled fact that DTO and MTA are separate legal entities and that only DTO is involved with day-to-day operations such as hiring, disciplining, and firing employees." *Thompson v. DTO*, No. 07-221, 2008 WL 2588060, at *7 (June 25, 2008).

It is possible that a degree of integration between two companies can result in the court's considering two separate entities a common employer of an individual. *See Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 (6th Cir. 1997). But MTA correctly points out that the plaintiff has offered only "blanket assertions" to support this "dual" employer relationship. (Docket No. 32 at 3-4.) Rather, the factual allegations in the Complaint, such as (1) that DTO and LU 1235 had the CBA agreement and (2) that DTO hired the plaintiff support the notion that DTO, not MTA, was the plaintiff's employer. (Docket No. 32 at 3-4.)

While arbitration decisions do not have preclusive effect on this employer identification issue as to the plaintiff's federal discrimination claims (*See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 548 (6th Cir. 2008)), the court notes that, in a 2005 arbitration initiated by ATU to determine who was the employer of an individual such as the plaintiff, the arbitrator concluded that DTO was, and MTA was not. *Thompson*, 2008 WL 2588060, at *2. Further, in the briefing on the motions to dismiss, the plaintiff did not challenge MTA's assertion that it was not the plaintiff employer. While the court is required to accept all the plaintiff's warranted factual allegations as true at this stage, the court is not required to accept the plaintiff's legal conclusions or unwarranted factual inferences about who her employer was. *See Winget v. JP Morgan Chase Bank*, 537 F.3d 565, 575 (6th Cir. 2008). Because, in light of the surrounding case law and findings, the plaintiff has not sufficiently pled that MTA was her employer, MTA cannot be liable to the plaintiff for causes of action that are based on an employer/employee

9

relationship, *i.e.*, the plaintiff's Title VII and THRA claims. *Swallows*, 128 F.3d at 992-993. Therefore, those causes of action as to MTA will be dismissed.[5]

As to the plaintiff's section 1981 claim, MTA, as a publicly chartered transportation provider, is plainly a state actor. *See Thompson*, 2008 WL 2588060, *7. As MTA is a state actor, claims against MTA alleging racial discrimination must be brought under section 1983, not section 1981. *See Jett v. Dallas Independent School District*, 491 U.S. 701, 733 (1989) (finding "the express cause of action for damages created by section 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in section 1981 by state governmental units ...") The plaintiff's section 1981 claim as to MTA will be dismissed. Therefore, all claims against MTA will be dismissed.[6]

**B.     DTO**

As with MTA, the plaintiff has asserted three causes of action against DTO. First, the plaintiff's Section 1981 claim against DTO will be dismissed. Like MTA, DTO is a state actor, because, as this court found earlier this year after thoroughly considering the function and operations of DTO, "its sole purpose is to support MTA through the state-assigned task of employing individuals to operate the metropolitan transport system." *Thompson*, 2008 WL 2588060, *7. As DTO, just as MTA, is a state actor, claims against DTO alleging racial

---

[5] The court understands that the relationship between DTO and MTA is complex, and, through this opinion, the court does not attempt to forestall future plaintiffs from asserting that they were jointly employed by both DTO and MTA. Rather, the court only states that *this* plaintiff has insufficiently pled a dual employer relationship.

[6] The court is aware that MTA advanced nearly a dozen arguments to dismiss some or all of the claims against it. While many of these arguments appear to have some merit, it is not necessary to consider them, as there is another basis for dismissing all the counts against MTA.

10

discrimination must be brought under section 1983, not section 1981. *See Jett*, 491 U.S. at 733. Therefore, the plaintiff's section 1981 claim against DTO will be dismissed.[7]

As to the plaintiff's Title VII claim, the plaintiff alleges that DTO perpetuated a racially hostile work environment and engaged in racial/gender discrimination in violation of Title VII. Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex." 42 U.S.C. § 2000e-2(a). To establish a prima facie claim of a racially hostile work environment under Title VII, plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was subject to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). The ultimate conclusion as to whether a work environment is racially hostile is based on a subjective and objective evaluation of whether a reasonable person would find it "hostile and abusive" and whether the plaintiff actually found it so. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). Here, the plaintiff's allegations, taken as true, do show that, as an African-American, she was subject to repeated, unwelcome, negative comments about African-Americans, such that it is more than "speculative" that an offensive and hostile work environment was created.

Further, the plaintiff has alleged that she and other members of her protected class were

---

[7] It is therefore not necessary to consider DTO's argument that the plaintiff's section 1981 claim is barred because she failed to sufficiently allege "race" discrimination and because she did not exhaust her internal union remedies before bringing the claim. (Docket No. 29 at 7-9.)

11

treated less favorably in terms of their working conditions while performing rider counts than similarly situated employees who were not in the plaintiff's protected class (white and/or male). (Docket No. 1 at 6-7.) The plaintiff supports these allegations by alleging that she was forced to work outdoors, without access to a car, without breaks or meals, while other similarly situated employees not in her protected class were allowed privileges such as access to a car and the right to work indoors. (*Id.*) Success on this "disparate treatment" aspect of the plaintiff's Title VII claim will depend on whether she can prove she was treated less favorably than a similarly situated employee outside of her protected class. *Leadbetter v. Gilley*, 385 F.3d 683, 691 (6th Cir. 2004). With these allegations and underlying factual support, the plaintiff has established that her Title VII claim should not be dismissed for failing to state a claim.

In response, DTO argues, not that the plaintiff has failed to state a claim under Title VII, but that the plaintiff did not properly exhaust her administrative remedies. (Docket No. 29 at 10-15.) DTO argues that, because the plaintiff's EEOC Charge only discussed racial hostility in the workplace and did not discuss the supposedly racially discriminatory "light duty" policy or gender discrimination, these later two matters cannot form the basis of the plaintiff's Title VII claim, because they would not be reasonably expected to grow out of the EEOC's investigation of the racial hostility claim. *Id.* (citing *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004)).

The court agrees that gender discrimination cannot form the basis of the plaintiff's Title VII claim, because the plaintiff did not allege gender discrimination in her EEOC Charge and gender discrimination would not have been reasonably expected to grow out of the EEOC's investigation of her Charge. Therefore, to the extent the plaintiff's Title VII claim is based on gender discrimination, the claim is not viable. That said, the court finds that the plaintiff's Title

12

VII claim should not be dismissed in totality. The plaintiff filed an EEOC Charge that alleged racial discrimination, received her right to sue letter, and has come forward with sufficient material to state a claim for a Title VII violation based on her race. That is all the plaintiff is required to do at this stage to state a claim for racial discrimination under Title VII. *See Dixon.*, 392 F.3d at 217. Therefore, the plaintiff's Title VII claim as to DTO will not be dismissed.

Finally, the plaintiff has also alleged that she is entitled to relief under the Tennessee Human Rights Act, which prohibits, among other things, racial discrimination in the "compensation, terms, conditions, or privileges" of employment. T.C.A. § 4-21-401(a)(1). For the reasons discussed above in the Title VII context, the plaintiff has alleged facts that, taken as true, demonstrate racial discrimination in employment. DTO responds that the THRA claim is time-barred, because actions must be brought within one year from the time the discriminatory practice ceases, which, for some reason, DTO assumes is the day the plaintiff filed her EEOC Charge, February 14, 2007. (Docket No. 29 at 16.) This is odd, because plaintiff is still employed by DTO and may very well still be subject to the same discriminatory practices discussed in the Complaint. Therefore, DTO's argument that the plaintiff's claim is time-barred is not persuasive. *See Warren Freedenfeld Associates, Inc. v. McTigue*, 531 F.3d 38, 44-45 (1st Cir. 2008) (finding where dismissal is premised on statute of limitations grounds, to dismiss, there must be "no doubt" the claim is barred). DTO also argues that the plaintiff dual-filed her Charge of Discrimination with the EEOC and Tennessee Human Rights Commission, thereby obligating herself to exhaust her administrative remedies before the THRC, before bringing a THRA claim in court. (Docket No. 29 at 18, citing *Moore v. Nashville Elec. Power Bd.*, 72 S.W. 3d 643, 649 (Tenn. Ct. App. 2001)). Without making citation to the record, DTO argues that the

13

plaintiff has not exhausted her administrative remedies, and the court lacks subject matter jurisdiction over the THRA claim. (Docket No. 29 at 18.) As this argument appears to be unsupported, the court will not grant DTO dismissal on the plaintiff's THRA claim on this ground.

## CONCLUSION

For the reasons discussed above, all the plaintiff's claims will be dismissed, except the plaintiff's Title VII claim and THRA claims against defendant DTO.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

14